UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: JP MORGAN CHASE & CO.<br>SHAREHOLDER DERIVATIVE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | Master File No. 08 Civ. 974 (DLC) |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
TO DISQUALIFY ROBERT L. GARBER AS PLAINTIFF**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS.....................................................................................................2

ARGUMENT..........................................................................................................................5

      A.      Garber Desires to Vigorously Prosecute the Underlying Corporate Claim ............6

            1.      Garber has been involved in pursuing this litigation from the outset. ........6

            2.      Garber is knowledgeable of both the facts alleged in the complaint and the relevant law................................................................................10

      B.      Garber Has Engaged Competent Counsel, Whatley Drake & Kallas, LLC, To Prosecute this Litigation................................................................................12

CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Cohen v. Bloch*,
　507 F. Supp. 321 (S.D.N.Y. 1980) ............................................................................................5

*Fradkin v. Ernst*,
　98 F.R.D. 478 (N.D. Ohio 1983) ............................................................................................10

*Kamen v. Kemper Fin. Servs., Inc.*,
　908 F.2d 1338 (7th Cir. 1990) ............................................................................................8, 10

*Markewich v. Adikes*,
　76 F.R.D. 68 (E.D.N.Y. 1977) ...............................................................................................12

*Robbins v. Moore Med. Corp.*,
　No. 91-3701, 1992 WL 396423 (S.D.N.Y. Dec. 21, 1992) .....................................................11

*Rogosin v. Steadman*,
　71 F.R.D. 514 (S.D.N.Y. 1976) ................................................................................................8

*Rothenberg v. Sec. Mgmt. Co., Inc.*,
　667 F.2d 958 (11th Cir. 1982) .......................................................................................6, 9, 10

*Schneider v. Austin*,
　94 F.R.D. 44 (S.D.N.Y. 1982) .....................................................................................5, 6, 12

*Surowitz v. Hilton Hotels Corp.*,
　383 U.S. 363, 86 S. Ct. 845 (1966) .................................................................................6, 7, 10

*Sweet v. Bermingham*,
　65 F.R.D. 551 (S.D.N.Y. 1975) ................................................................................................5

*Zamer v. Diliddo*,
　No. 97-CV-32S, 1999 WL 606731 (W.D.N.Y. Mar. 23, 1999) ...............................................5

**STATE CASES**

*In re Fuqua Indus., Inc. S'holder Litig.*,
　752 A.2d 126 (Del. Ch. 1999) ....................................................................................8, 10, 11

**FEDERAL RULES**

Fed. R. Civ. P. 23.1 .........................................................................................................................5

Pursuant to this Court's July 9, 2008 Order, Plaintiff Robert L. Garber respectfully submits this response in opposition to Defendants' Motion to Disqualify Robert L. Garber as Plaintiff and Dismiss the Action ("Motion").

## **INTRODUCTION**

This shareholder derivative action was filed on January 30, 2008, against the officers and directors of JP Morgan Chase & Co. ("JP Morgan") by Leigh Lasky of Lasky & Rifkind, Ltd. ("Lasky & Rifkind") as counsel for Plaintiff Garber. (*See* Verified Shareholder Complaint of Robert Garber). Garber verified the complaint on January 28, 2008. (*Id.* at 54). On May 8, 2008, the Court consolidated Garber's action with an action filed by Robbins, Umeda & Fink, LLP, and Lasky & Rifkind on behalf of Plaintiff James Shroff.[1] (Docket # 8). On May 23, 2008, Robbins Umeda filed a notice of appearance on behalf of Garber. (Docket # 16).

On June 9, 2008, the Court ordered Defendants to depose Garber regarding, among other things, his qualifications to maintain this action under Rule 23.1. (Docket #19). In compliance with the Court's order, Garber was deposed on June 26, 2008 and his deposition was submitted to the Court. Following Garber's deposition and a hearing before this Court, Defendants filed the instant Motion to disqualify. (Docket #36). As set forth more fully below, Defendants have failed to establish that Garber will not fairly and adequately represent the interest of shareholders in enforcing the rights of the corporation, JP Morgan. The record demonstrates that Garber has been involved in this litigation from the outset, that he has not simply relegated control of this litigation to others, that he is knowledgeable of both the facts alleged in the complaint and the law involved in this litigation, and that he has engaged competent counsel, the law firm of Whatley Drake & Kallas, LLC, to assist him in the vigorous prosecution of his corporate claims.

---

[1] On July 16, 2008, the Court granted Shroff's motion to voluntarily dismiss his complaint without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Docket #24)

- 1 -

## STATEMENT OF FACTS

Bernstein Wealth Management purchased shares of JP Morgan on behalf of Garber in 2003 or 2004. Garber Dep. 80-81. In addition to the JP Morgan stock, Garber owns stock in 100 to 200 companies, and he has also been a representative plaintiff in a number of other derivative shareholder litigations. Garber Dep. at 59-60, 84. Garber testified that he learned from JP Morgan's financial reports that the company had large write-downs despite projections and statements that the subprime mortgage crisis would not affect the company. Garber Dep. at 9. Garber spoke with Al Yates about JP Morgan's write-downs despite their "rosy projections." Garber Dep. at 8-10. Garber has had both an attorney-client relationship and friendship with Yates. *See* Declaration of Alfred G. Yates filed contemporaneously herewith ("Yates Decl.") at ¶ 2. Garber testified that Yates is an attorney involved in securities litigation, and Yates had been Garber's "conduit for updating him" about many of the other shareholder derivative actions in which he is a representative plaintiff. Garber Dep. at 9-10, 62. Yates indicated to Garber that he would "look into" JP Morgan. Garber Dep. at 8-10. After Garber spoke with Yates, Yates put Garber in contact with Leigh Lasky of Lasky & Rifkind. Garber Dep. at 29-30. Garber conferred with Mr. Lasky as well as Yates regarding an investigation of the actions of JP Morgan's board of directors.[2] Garber Dep. at 8-10.

Mr. Lasky informed Garber of the results of the investigation into the actions of JP Morgan's board of directors. Garber Dep. at 24-26, 29. Garber testified that the investigation revealed the following:

> [T]here were serious questions as to the actions of the board in not overseeing the officers, and that the officers during this period engaged in selling of their own shares to the tune of collectively of $211 million, but also a buy back of the company which artificially held their prices up … .

---

[2] On August 7, 2008, this Court granted motions by Robbins Umeda and Lasky & Rifkind to withdraw as counsel in this litigation. Therefore, Garber is no longer represented by Robbins Umeda or Lasky & Rifkind in this action.

Garber Dep. at 9. Garber also conferred with Mr. Lasky regarding whether the officers' and directors' conduct was actionable and whether a derivative action should be pursued. Garber Dep. at 24-25, 29. Garber testified that he spoke with Mr. Lasky by telephone and Mr. Lasky informed Garber that he believed a derivative shareholder case should be pursued. Garber Dep. at 10. Garber also testified that he relied on Mr. Lasky with regard to any pre-suit investigation and he relied on counsel in deciding who would be named as defendants in the case. Garber Dep. at 22-22.

After the Complaint was drafted, Garber testified that he read the Complaint, discussed the Complaint with counsel, commented favorably upon the Complaint, and ultimately approved of the Complaint. Garber Dep. at 35-36. Garber further testified that he obtained knowledge, information and belief from counsel sufficient for verification of the Complaint. Garber Dep. at 37.

> When asked why he brought the lawsuit, Garber explained:
>
> It is the basis of our system, that is shareholders, the company officers and board are responsive to us in running the company, that they have fiduciary duties to always act in the best interest and welfare of the company. In this instance obviously I am alleging that there has been self-dealing, misrepresentation, and that this caused serious financial harm to the company, as well as that they have profited from what I believe to be insider trading. And the mechanism to call them to task and to enforce our rights is for a shareholder such as myself to step forward in a derivative action and make them be held accountable.

Garber Dep. at 8. In addition, when asked what he believed the directors and officers did wrong, Garber stated:

> In 2006 they understated their portfolio exposure in the mortgage industry and the collaterized, I think they are called CODs, and at that stage they had said that the mortgage debacle that was brewing was not going to affect them. That they were well positioned. That they were earning fees, the highest fees that they ever earned in equity management. That they were doing supremely well and they were positioned well to go forward.

> That at that time they were putting out rosy projections, reports as to the status of the company, when as insiders, as the officers of the corporation they knew that they had tremendous exposure, I believe up to 9 percent of their portfolio was in the mortgage markets that they were at risk. That the reserves that they had set up were not sufficient, but they still kept pumping up the intrinsic value of the company.
>
> At the same time based upon information they knew and the public didn't, information that they knew that I was not privy to, that was not in any financial paper that I read or any reports or anything that was broadcast, they were selling back their own shares as well as coming up with a $11.6 billion corporate buy back of stock which artificially maintained an inflated value for the stock, and of course that inured to their benefit and that would be commonly known as unjust enrichment.
>
> By doing that they breached their fiduciary responsibilities to both the corporation, to we the investors, shareholders and to the investing public.

Garber Dep. at 13-15.

Garber testified that he spent approximately 10 hours preparing for his deposition. Garber Dep. at 68. Garber has spent 10-15 hours on this case including time communicating with counsel, in addition to the time spent preparing for his deposition. Garber Dep. at 68.

Garber testified that by filing the lawsuit, he hopes to have individuals that "profited from inside dealing" to disgorge profits back to the corporation, to collect damages from individuals that harmed JP Morgan, to install some new board members or directors, and to re-establish JP Morgan's reputation and integrity. Garber Dep. at 23. Garber also testified in his deposition that, as a representative in a derivative shareholder action, he is a "volunteer" on behalf of the corporation and that any type of recovery resulting from the case goes to the corporation. Garber Dep. at 31-32. When asked if he has adequately served as a representative plaintiff in this case, Garber testified that he "believe[s] that [by] adhering to, absorbing, following, discussing advice with counsel, that I have done what is appropriate as representative, as that we are pursing recovery for the corporation." Garber Dep. at 97.

- 4 -

Lastly, Garber also testified that he has not been compensated for his participation in this litigation and he has no agreement regarding future compensation. Garber Dep. at 32, 49-50. Likewise, Yates has not, nor will he in the future, receive any payment or compensation for any of his participation in this litigation, and he does not have an agreement with anyone to be compensated for any participation in this litigation. Yates Decl. at ¶¶ 3, 4.

## **ARGUMENT**

Federal Rule of Civil Procedure 23.1 requires that a plaintiff in a derivative action "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). The relevant inquiry under Rule 23.1 focuses "on the degree of certainty that a derivative plaintiff will vigorously prosecute the corporate claim in the interests of the minority stockholders." *Cohen v. Bloch*, 507 F. Supp. 321, 324 (S.D.N.Y. 1980). Rule 23.1 requires that the representative plaintiff: (1) desire to vigorously prosecute the underlying corporate claim, (2) engage competent counsel to assist in that endeavor and (3) lack any conflicts of interests which go to the forcefulness of prosecution or the existence of antagonism between the plaintiff and the other shareholders. *Schneider v. Austin*, 94 F.R.D. 44, 46 (S.D.N.Y. 1982); *Zamer v. Diliddo*, No. 97-CV-32S, 1999 WL 606731, at *4 (W.D.N.Y. March 23, 1999).

Defendants bear the burden of establishing that Garber's representation is inadequate. *Schneider*, 94 F.R.D. at 46 n. 1; *Zamer*, 1999 WL 606731, at *3. The "most important element" to a Rule 23.1 adequacy analysis is whether the plaintiff possesses a conflict of interest such that the plaintiff's interests are antagonistic to those he is she is seeking to represent, *Sweet v. Bermingham*, 65 F.R.D. 551, 554 (S.D.N.Y. 1975), but Defendants do not argue that Garber possesses such a conflict. Rather, Defendants contend that Garber does not desire to vigorously prosecute the underlying corporate claim and that he has not engaged competent counsel to do

- 5 -

so.³  Defs.' Mem. at 9.  Defendants have failed to meet their burden of establishing that Garber will not adequately represent the interests of shareholders.

> A. **Garber Desires to Vigorously Prosecute the Underlying Corporate Claim**

Defendants argue that Garber has not demonstrated the desire to vigorously prosecute the underlying corporate claim for two reasons.  First, Defendants argue that Garber does not "control" the litigation.  Defs.' Mem. at 10-12.  Second, Defendants argue that Garber is not "familiar" with this litigation, and that he is not personally committed to it.  Defs.' Mem. at 12-13.  For the reasons set forth below, each of these arguments should be rejected and this Court should find that Garber is an adequate representative under Rule 23.1 because he desires to vigorously prosecute the underlying corporate claim

> 1. **Garber has been involved in pursuing this litigation from the outset.**

Defendants challenge Garber's involvement in this litigation and contend that he has failed to exercise any control over the litigation.  However, Garber has been personally involved in this litigation from the outset.  Even if Garber had been less involved in this litigation, a plaintiff's "limited involvement in [the action's] preparation" does not "impact upon [plaintiff's] ability, with the aid of competent counsel, to pursue vigorously [a] derivative action." *Schneider*, 94 F.R.D. at 47.  *See also Rothenberg v. Sec. Mgmt. Co., Inc.*, 667 F.2d 958, 963 (11th Cir. 1982) (holding that a plaintiff will not "sacrifice his/her status as a representative plaintiff by granting an attorney broad discretion to investigate and pursue a claim.").

The Supreme Court addressed the level of involvement or control that a plaintiff must have over derivative litigation in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S. Ct. 845, *rehearing denied*, 384 U.S. 915 (1966).  In that case, the plaintiff in a derivative action had limited education, spoke little or no English, and likely "did not understand any of the legal

---

³ Defendants have not raised any issues or concerns regarding the competency of Garber's current counsel.

relationships or comprehend any of the business transactions described in the complaint." *Id.* at 370. The plaintiff's deposition testimony revealed that she did not understand the complaint, she could not explain the statements made in the complaint, she had little knowledge of what the lawsuit was about, she did not know any of the defendants by name, and she did not know the nature of the alleged conduct. *Id.* at 366. The plaintiff testified that when she verified the complaint, she had relied on her son-in-law, who had essentially filed and prosecuted the derivative shareholder action on the plaintiff's behalf. *Id.* at 366. The Supreme Court held that the plaintiff's reliance on her son-in-law was not grounds for dismissal and that plaintiff could continue to prosecute the derivative action based upon the fact that her son-in-law, who was qualified and whom she trusted, had examined the matter and determined that improper conduct had taken place. *Id.* at 374.

Garber has clearly exercised much more involvement and control over this litigation than the plaintiff in *Surowitz*. Indeed, Defendants' argument that Garber has "failed to exercise any oversight of his lawsuit" mischaracterizes Garber's involvement in this litigation. Garber had several conversations with Mr. Lasky regarding the results of the investigation into the actions of JP Morgan's board of directors, whether the directors' and officers' actions were actionable, and whether a derivative action should be brought. Garber Dep. at 8-10, 24-26, 29. After the Complaint was drafted, Garber reviewed the Complaint, discussed the Complaint with counsel, and ultimately approved and verified the Complaint. Garber Dep. at 35-36. In addition, Garber has spent approximately 10-15 hours participating in this litigation, excluding the time he spent preparing for his deposition. Garber Dep. at 68. Therefore, Garber has demonstrated that he is both involved in and that he sufficiently "controls" this litigation. Further, "[o]ur legal system has long recognized that lawyers take a dominant role in prosecuting litigation on behalf of

clients[, and a] conscientious lawyer should indeed take a leadership role in thrust herself to the fore of a lawsuit." *In re Fuqua Indus., Inc. S'holder Litig.*, 752 A.2d 126, 135 (Del. Ch. 1999). *See also Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1349 (7th Cir.1990), *rev'd on other grounds*, 500 U.S. 90 (1991) (plaintiff adequate although she "had given counsel free reign"). Therefore, Garber is not rendered an improper plaintiff simply because he relied on the advice counsel with regard to this litigation.

Defendants cite to *Rogosin v. Steadman*, 71 F.R.D. 514 (S.D.N.Y. 1976) in support their argument that Garber's involvement in this litigation is inadequate. However, the facts of *Rogosin* are clearly distinguishable from the facts presented here. In *Rogosin*, the court found that the plaintiff could not adequately represent the class because not only was her husband the guiding force behind the filing of the case, but the plaintiff had not authorized and was not even aware that a derivative action had been commenced in her name. *Id.* at 518-19. In fact, the plaintiff first learned of the existence of the case four years after the litigation commenced. *Id.* at 517-18. The plaintiff's husband testified that he initiated the litigation and that he never sought nor had any intention of seeking his wife's judgment on any aspect of the case. *Id.* at 517. In addition, the plaintiff's counsel testified that he did not speak to his client at the time of or prior to filing the complaint and that he first spoke to his client several years after filing the complaint and just days before her deposition. *Id.* at 518. Therefore, the court held that under these "disturbing circumstances" the plaintiff did not adequately represent the class. *Id.* at 516.

The facts here present a vastly different situation. Unlike the plaintiff in *Rogosin* who was a "puppet" for others, *Id.* at 516, Garber has been aware of this litigation from the start and is well versed with the specific allegations in the complaint. Garber Dep. at 8-10, 13-15, 24-26, 29. Garber reviewed the complaint prior to its filing and commented favorably. Garber Dep. at

- 8 -

35-36. Garber verified the complaint and determined with the advice of counsel that the litigation should be pursued. Garber Dep. at 10, 24-25, 29, 37. Given Garber's knowledge of the facts alleged in the Complaint, his knowledge of the legal aspects of derivative shareholder litigations, and his testimony regarding his involvement in this case, Defendants significantly understate the amount of control that Garber has exercised over this litigation.

Defendants also cite *Rothenberg,* for the proposition that Garber is inadequate because he has improperly handed over "unbridled discretion … to investigate and pursue the derivative suit." Defs.' Mem. at 11 (quoting *Rothenberg*, 667 F.2d at 963). In *Rothenberg*, a number of "extreme" facts led the court to conclude that the plaintiff was improper for the purpose of Rule 23.1. *Id.* at 963. The court held that

> plaintiff's almost total lack of knowledge about the facts of the case, her inability to comprehend the nature of her suit two years after filing the complaint, her apparent lack of personal commitment to the suit, repeated indications that her ultimate goal was to recover personal losses, and the likelihood that that she would not gain significantly from a favorable judgment, coupled with the almost unbridled discretion to given plaintiff's attorney to investigate and pursue the derivative suit and the absence of any appreciable support from other shareholders collectively demonstrate that she was an improper plaintiff for purposes of Rule 23.1.

*Id.* at 963. In addition, the plaintiff herself admitted that her lack of knowledge made her an inappropriate plaintiff to maintain the suit. *Id.* at 962.

The facts of this case are easily distinguishable. First, as set forth above, Garber's deposition makes clear that, unlike the plaintiff in *Rothenberg*, he has not given "unbridled discretion" to Yates and/or counsel in this case. Second, even if Garber had handed over some control of the litigation, unlike the plaintiff in *Rothenberg*, as set forth in more detail under section 2 below, Garber possesses knowledge of the facts of the case, comprehends the nature of the suit, has demonstrated a commitment to the suit, and understands that the goal in the litigation is not to recover personal losses.

Lastly, Defendants also suggest that Yates's involvement in this litigation is somehow improper. As set forth in the Yates Declaration, Yates has had both an attorney-client relationship and friendship with Garber. Yates Decl. at ¶ 2. In addition, Yates has not received, nor will he receive, any compensation or payment of any kind for his participation in this litigation. Yates Decl. at ¶¶ 3, 4. Like the plaintiff in *Surowitz* with the aid of her son-in-law, Garber discovered his injury and filed this action with the aid of Yates, a trusted friend and attorney involved in securities litigation. Here, it would also be improper to dismiss Garber as a plaintiff simply because he may have relied to some extent on the advice of Yates, given that Garber has been substantially more involved in the prosecution of this litigation and more knowledgeable about the facts of this case than the plaintiff in *Surowtiz*.

### 2. Garber is knowledgeable of both the facts alleged in the complaint and the relevant law.

Defendants also argue that Garber "falls short" of the requirement that plaintiff have personal knowledge of the facts alleged in the Complaint. A representative plaintiff in a derivative shareholder action does not need "a precise understanding of every fact or legal issue in a derivative suit." *Rothenberg*, 667 F.2d at 963. *See also Kamen*, 908 F.2d at 1349 (plaintiff adequate although "she knew little about ... the case"); *Fradkin v. Ernst*, 98 F.R.D. 478, 487 (N.D. Ohio 1983) ("[I]n light of *Surowitz* ... lack of knowledge on the part of the named plaintiff is not a sufficient reason for barring a suit from continuing as a derivative action."); *In re Fuqua*, 752 A.2d at 135 (holding that, although plaintiff "confused ... some of the factual information" plaintiff was adequate when "he was able to articulate a basic understanding of the entrenchment claim and the facts supporting it"). "While a class representative must have knowledge of the facts necessary to support the 'essential allegations in his complaint' ... 'in complex litigation such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to

qualify as a class representative, and a great deal of reliance on the expertise of counsel is to be expected.'" *Robbins v. Moore Med. Corp.*, No. 91-3701, 1992 WL 396423, at *2 (S.D.N.Y. Dec. 21, 1992) (internal citations omitted).

Garber's knowledge of both the facts and the law involved in this case go above and beyond what is required of a representative in a derivative shareholder action. When questioned about what the JP Morgan's officers and directors did wrong, Garber was able to discuss the factual allegations in the complaint at length. Garber Dep. at 13-15. Garber also has a clear understanding regarding his role as a shareholder representative and a clear understanding of the remedies sought in this litigation. Garber Dep. at 23, 31-32.

Defendants also argue that Garber's knowledge or commitment to *other* derivative actions in which he is a representative plaintiff shows that he is not an adequate representative. Although Garber was not able to articulate the details of each derivative litigation in which he is a representative plaintiff, Garber indicated that he receives updates by mail and through conversations with counsel regarding these actions and that his secretary maintains the files related to these cases. Garber Dep. at 53, 115. In any event, the only issue here is whether Garber has demonstrated commitment and possesses knowledge of this litigation. *See In re Fuqua*, 752 A.2d at 134 (rejecting that plaintiff was inadequate because he lacked knowledge regarding the other lawsuits in which he was a representative plaintiff). Garber's involvement in other litigation is irrelevant to the determination of whether he can adequately serve as a representative plaintiff in this action. The subtext to Defendants' argument is that Plaintiff is inadequate because is a "professional plaintiff." However, "no limit exists on the number of lawsuits one individual can bring in a lifetime." *Id.* Further, the Second Circuit Court of Appeals has rejected a challenge to an individual adequacy to serve as a class representative

because he is a "professional plaintiff." *See Markewich v. Adikes*, 76 F.R.D. 68, 74-75 (E.D.N.Y. 1977). Accordingly, Garber's involvement in other shareholder derivative actions is irrelevant to whether he meets the requirements of Rule 23.1.

### B. Garber Has Engaged Competent Counsel, Whatley Drake & Kallas, LLC, To Prosecute this Litigation

Finally, Defendants argue that counsel for Garber have "proved themselves unable or unwilling to establish their adequacy." Defs' Mem. at 14. However, Defendants bear the burden of establishing that counsel for Garber is inadequate. *Schneider*, 94 F.R.D. at 46 n.1. As set forth in the Declaration of Joe R. Whatley, Jr., the law firm of Whatley Drake & Kallas possesses the qualifications and experience necessary to vigorously prosecute this action on behalf of Garber. *See* Declaration of Joe R. Whatley, Jr. Regarding the Adequacy of Whatley Drake & Kallas, LLC to Serve as Counsel for Plaintiff Robert L. Garber (Docket #31) at ¶¶2-4. Defendants have not raised any issues or concerns regarding the competency of Whatley Drake & Kallas. Therefore, Defendants have failed to establish that Whatley Drake & Kallas cannot competently prosecute this litigation.

Further, because both Robbins Umeda and Lasky & Rifkind have withdrawn as counsel of record in this litigation, the competency of those law firms is no longer relevant in regard to whether counsel is adequate. In addition, Garber's original choice of Robbins Umeda and Lasky & Rifkind to represent him does not call into his adequacy into question. Garber testified that he was referred to Lasky & Rifkind through Yates with whom he has had both an attorney-client relationship and friendship for many years. Garber Dep. at 29-30, 122-23. *See also* Yates Decl. at ¶ 2. With respect to Robbins Umeda, Garber had been represented by Robbins Umeda in prior litigation, he was satisfied with Robbins Umeda's representation, and at the time Robbins Umeda filed its notice of appearance on behalf of Garber, he was unaware of the motion

for sanctions against Robbins Umeda that had been granted in a North Carolina court. *See* Garber Dep. at 118-120; Declaration of Robert Garber in Support of Application for Lead Counsel By Robbins Umeda & Fink at ¶ 3 (Docket #15).

## **CONCLUSION**

For the foregoing reasons, this Court should find that Plaintiff Robert L. Garber is a fair and adequate representative and deny Defendants' motion to dismiss this action.

DATED:  New York, New York                    Respectfully Submitted,
        August 22, 2008

        /s/ Deborah Clark-Weintraub
        Joe R. Whatley, Jr. (JW1222)
        Deborah Clark-Weintraub (DW6877)
        WHATLEY DRAKE & KALLAS, LLC
        1540 Broadway, 37th Floor
        New York, New York 10036
        Tel: (212) 447-7070
        Fax: (212) 447-7077

        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Deborah Clark-Weintraub, hereby certify that on August 22, 2008, I caused a true and correct copy of the foregoing Response in Opposition to Defendants' Motion to Disqualify Robert L. Garber as Plaintiff to be served upon the following counsel via the Court's CM/ECF system:

    SULLIVAN & CROMWELL LLP
    Sharon L. Nelles
    Gerald L. Black, Jr.
    125 Broad Street
    New York, NY  10004-2498
    Telephone: (212) 558-4000
    Facsimile: (212) 558-3588

    /s/ Deborah Clark-Weintraub
    Deborah Clark-Weintraub